UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| CHRISTOPHER STOUT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LEADEC CORP.[1], )<br>et al., )<br>)<br>Defendants. ) | Civil Action No. 3:21-CV-171-CHB<br><br>**MEMORANDUM OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on the Defendants' Motion to Dismiss, [R. 6]. Following an Order from the Court, [R. 8], Plaintiff filed an untimely Response,[2] [R. 9]. Defendants then replied, [R. 10]. Also before the Court is Plaintiff's Motion to Amend, [R. 5–1]. Defendants filed no response to the Motion to Amend. These matters are fully briefed. For the reasons set forth below, the Court will grant Plaintiff's Motion to Amend and grant the Defendants' Motion to Dismiss.

I. **BACKGROUND**

Plaintiff, Christopher Stout, filed his Complaint in the Jefferson County Circuit Court on February 22, 2021. [R. 1–1, pp. 7–13]. Defendants timely removed this case on March 17, 2021. [R. 1, pp. 1–7]. Plaintiff claims that his former employer, Leadec Corp., and several employees of Leadec, complied with an unlawful garnishment of his wages. [R. 7–2, pp. 14–16, ¶¶ 1–4][3].

---

[1] Plaintiff improperly named Defendant Leadec Corp. as "Leadec Industrial Services" in his Complaint. [R. 1–1]. Plaintiff then filed a Motion to Amend, [R. 5–1], to, among other things, correct the corporate Defendant's name.
[2] Local Rule 7.1(c) states that "[f]ailure to timely respond to a motion may be grounds for granting the motion." Joint Ky. Civ. Prac. R. 7.1(c). Even so, the Court will address the parties' arguments on the merits.
[3] Because the Court will grant Plaintiff's Motion to Amend, *see infra* Section II, the Court will cite to the Amended Complaint outlining Plaintiff's allegations, along with its exhibits.

Near the beginning of Plaintiff's employment, the Kentucky Department of Revenue ("Department") informed Leadec, through a Notice of Levy, that Plaintiff owed delinquent taxes. *Id.* at pp. 13, ¶ 2. The Notice of Levy mandated that Leadec garnish Plaintiff's wages to satisfy a state tax debt of $2,107.71. [R. 7–2, Ex. C, p. 24]. The Department ordered Defendants to deduct fifteen percent of Plaintiff's wages to satisfy this debt. *Id.* Defendants garnished Plaintiff's wages five times, totaling $903.47. [R. 7–2, pp. 10, 13].

Plaintiff repeatedly informed Leadec that he wished to challenge the validity of the Notice of Levy. [R. 7–2, pp. 13–14, ¶¶ 3–5, 8]. Over the course of his employment, Plaintiff sent Leadec five written documents contesting the garnishment. *Id.* After the fifth communication, Defendant Robert Orcutt, in-house counsel for Leadec, informed Plaintiff that Leadec would continue to deduct and transfer his wages until the tax debt was satisfied in full. [R. 7–2, Ex. K, pp. 51–52].

Plaintiff's Amended Complaint raises four legal claims.[4] First, Plaintiff claims that the Defendants violated KRS § 131.520(1) and KRS §§ 514.030(1) and (2) by garnishing his wages without a court order. *Id.* at 11, ¶ 1. Second, Plaintiff contends that the Defendants violated Sections 10 and 11 of the Kentucky Constitution by depriving him of a portion of his wages without a warrant or due process of law. *Id.* at ¶ 2. Third, Plaintiff similarly argues that Defendants violated the Fourth and Fifth Amendments of the United States Constitution by unlawfully seizing his wages without due process of law. *Id.* at 11–12, ¶ 3. Finally, Plaintiff

---

[4] Plaintiff's Amended Complaint refers to a singular Defendant, Leadec Corp. (erroneously referred to in his initial Complaint as "Leadec Industrial Services"). [R. 1–1, p. 7; R. 7–2, p. 10]. However, the Jefferson Circuit Court Clerk interpreted this case to include the following individuals as defendants: William Bell, Deb Huston, and Robert Orcutt. [R. 6–1, p. 13]. In their Motion to Dismiss, Defendants argue that any claims against these individuals should be dismissed due to lack of personal jurisdiction and failure to serve process. *Id.* at 13–17. The Defendants also argue that the Court should dismiss this case for failure to join an indispensable party, the Kentucky Department of Revenue. *Id.* at 10–11. Because the Court is granting the Motion to Dismiss against all Defendants on other grounds, the Court will not address those arguments.

claims Defendant Leadec breached its collective bargaining agreement with the United Auto Workers ("UAW") by not paying Plaintiff his agreed-upon wages in full. *Id*. at 12, ¶ 4.

Defendants filed a Motion to Dismiss on March 24, 2021, asking the Court to dismiss Plaintiff's Complaint in its entirety for failure to state a claim. [R. 6]. Defendants contend that the Court should dismiss Plaintiff's entire Complaint because Defendants were legally required to comply with the Notice of Levy. [R. 6–1, pp. 5–7]. Defendants also contend that Plaintiff's constitutional arguments are legally doomed for the following reasons: (1) Plaintiff's claims arising under the Kentucky Constitution must fail because Kentucky law does not recognize a private cause of action for state constitutional claims, and (2) Plaintiff's federal constitutional claims also fail because Defendants are not state actors and therefore cannot be held liable under 42 U.S.C. § 1983. *Id.* at p. 7–10. Finally, Defendants argue that the breach of contract claim fails for failure to plead adequate factual matter to support the claim. *Id.* at 12.

This Court, on April 8, 2021, ordered Plaintiff to respond to Defendant's Motion to Dismiss and explain why he has continued to file motions in state court. [R. 8]. Plaintiff responded to the present motion on June 14, 2021. [R. 9, pp. 1–6]. Defendants replied, primarily contending that Plaintiff's Response failed to address, and thus conceded, the legal and factual contentions in its Motion to Dismiss. [R. 10, pp. 1–12].

## II. MOTION TO AMEND

The procedural posture of this case is tangled. Just prior to removal of this case to federal court, Plaintiff filed a Motion to Amend in state court on March 11, 2021. [R. 5-1, p. 2]. Plaintiff failed to attach a proposed amended complaint to that Motion, so the state court, post-removal on March 23, 2021, purported to grant the Motion to Amend and to order Plaintiff to tender an amended complaint within ten days of its order. [R. 5–2]. Notwithstanding removal to federal

court, Plaintiff continued to file motions and documents in state court. [R. 7]. Plaintiff filed a Motion to Extend Time to File Second Amended Complaint[5] in state court on March 26, 2021. [R. 7–1, pp. 2–4]. Plaintiff tendered a proposed Amended Complaint in state court on April 5, 2021.[6] [R. 7–2, pp. 10–17]. The Motion to Amend and Amended Complaint were first filed in this Court by Defendants, not Plaintiff, on March 24, 2021 and April 8, 2021, respectively. [R. 5; R. 7].

Under Federal Rule of Civil Procedure 15(a)(1)(B), if a pleading is one to which a responsive pleading is required, a party may amend once as a matter of course within twenty-one days after service of a responsive pleading or within twenty-one days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. FED. R. CIV. P. 15(a)(1)(B). "An amended complaint supersedes an earlier complaint for all purposes." *Calhoun v. Bergh*, 769 F.3d 409, 410 (6th Cir. 2014) (citations omitted). Generally, "an amended complaint moots pending motions to dismiss." *Crawford v. Tilley*, 15 F.4th 752, 759 (6th Cir. 2021). However, a court may apply a pending motion to dismiss to an amended complaint if it is "substantially identical to the original complaint." *Id.* (citations omitted); *see also Green v. Mason*, 504 F. Supp. 3d 813, 826 (S.D. Ohio 2020) (holding that "[i]f some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading.") (citations omitted).

Defendants served their Motion to Dismiss on March 24, 2021, in lieu of an Answer, and Plaintiff's proposed Amended Complaint was filed in this Court on April 8, 2021. [R. 6, R. 7].

---

[5] Plaintiff's reference to "Second" Amended Complaint is in error, as no other amendments were ever granted in state court. Because the Court will grant Plaintiff's Motion to Amend, the Court will deny as moot the Motion to Extend Time, [R. 7–1], improperly filed in state court post-removal.

[6] Because the Court grants Defendant's Motion to Dismiss, the Court will not address Plaintiff's one-page Motion for Estoppel and Summary Judgment that he improperly filed in state court post-removal along with his Amended Complaint. [R. 7–2, p. 9].

Thus, Plaintiff's Amended Complaint was filed within the twenty-one days allotted under Rule 15(a)(1)(B). As this is a timely-filed amendment of right, the Court grants Plaintiff's Motion to Amend, [R. 5–1][7]. His Amended Complaint, [R. 7–2], is therefore the operative complaint. *See Calhoun*, 769 F.3d at 410.

The Court will apply the Motion to Dismiss, [R. 6], to the Amended Complaint because it is "substantially identical" to the original Complaint. *See Crawford*, 15 F.4th at 759. Indeed, the Amended Complaint contains only two arguably substantive changes: (1) Plaintiff corrects the corporate Defendant's legal name to "Leadec Corporation," and (2) Plaintiff attempts to add a federal statutory violation by adding a reference to KRS § 131.520(1)'s federal counterpart, 26 U.S.C. § 6332. [R. 7–2, pp. 10, 15]. Although Plaintiff did not directly discuss 26 U.S.C. § 6332 in his initial Complaint, he cited cases decided under the related Internal Revenue Code provisions. [R. 1–1, p. 12, ¶ 3]. Defendants addressed those related arguments in their Reply and explained how Plaintiff misinterpreted federal law. [R. 10, p. 7]. Otherwise, Plaintiff's proposed Amended Complaint relies on the same conclusory statements and irrelevant law that doom his initial Complaint. [R. 7–2, pp. 10–17]. Thus, because the Amended Complaint is an almost verbatim recitation of the initial Complaint, the Court evaluates the Motion to Dismiss, [R. 6], against the Amended Complaint.

### III. ANALYSIS

Federal Rule of Civil Procedure 12(b)(6) allows a party to seek dismissal for "failure to state a claim on which relief may be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550

---

[7] As mentioned, the state court purported to grant Plaintiff's Motion to Amend on March 23, 2021, [R. 5–2], but that order was entered after the case had been removed to this Court.

U.S. 544, 570 (2007)). A claim is "plausible on its face" when a plaintiff pleads sufficient factual allegations to create a reasonable inference of liability. *Id.* To survive a motion to dismiss, a plaintiff must allege "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Deciding whether a plaintiff's complaint alleges a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. When ruling on a motion to dismiss, courts accept all factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Twombly*, 550 U.S. at 555; *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015). However, a court need not accept legal conclusions as true; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts construe *pro se* complaints liberally. *See Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991) ("[A]llegations of a complaint drafted by a *pro se* litigant are held to less stringent standards than formal pleadings drafted by lawyers in the sense that a *pro se* complaint will be liberally construed in determining whether it fails to state a claim upon which relief could be granted."). As Plaintiff is a *pro se* litigant, the Court will view his pleadings more leniently. *See id.* However, a *pro se* plaintiff must still allege more than mere legal conclusions to survive a motion to dismiss. *Cantley v. Armstrong*, 391 F. App'x 505, 506 (6th Cir. 2010*); see also Chong Hun Cook v. Gov't of Columbus*, No. 19-3577, 2020 WL 3406068, at *1 (6th Cir. Jan. 15, 2020).

Further, when a plaintiff fails to address certain arguments raised in a dispositive motion by the defendant, "a court may treat those arguments that the plaintiff failed to address as conceded." *Degolia v. Kenton Cty.*, 381 F. Supp. 3d 740, 759–60 (E.D. Ky. 2019); *see also Humphrey v. U.S. Att'y Gen.'s Off.*, 279 F. App'x 328, 331 (6th Cir. 2008) (reasoning that a plaintiff's failure to respond to a motion to dismiss waived his opposition to the motion and the

arguments therein). Here, Plaintiff's Response failed to address many of Defendants' legal arguments. Notably, Plaintiff failed to address the lack of a private cause of action for his state constitutional claims, the lack of state action to support his federal constitutional claims (with the exception of a single conclusory sentence claiming state action and without citing any case law), and his failure to plead facts sufficient to support his breach of contract claim, [R. 9, pp. 1–6]. Defendants therefore argue that Plaintiff concedes those arguments. [R. 10, pp. 9–10]. The Court agrees. *See Degolia*, 381 F. Supp. 3d at 759–60*; see also Humphrey*, 279 F. App'x at 331. However, given Plaintiff's *pro se* status, the Court will address the merits of the Motion to Dismiss, and, for the reasons explained below, the Court finds that Plaintiff fails to state a claim on which relief can be granted.

### A. Statutory Claims

Plaintiff alleges that Defendants violated two Kentucky state statutes: KRS § 131.520(1) and KRS §§ 514.030(1) and (2). [R. 7–2, p. 11, ¶ 1]. Specifically, Plaintiff argues that Defendants violated his statutory rights by deducting and transferring his wages to the Department of Revenue without a court order, which he believes Kentucky law requires. [R. 7–2, pp. 14–16, ¶¶ 1–4].

Kentucky law requires employers to honor a state tax levy. KRS § 131.520(1) provides:

> Any person in possession of or obligated with respect to property or rights to property subject to levy upon which a levy has been made *shall*, upon demand of the commissioner or his delegate, surrender such property or rights or discharge such obligation to the commissioner or his delegate, *except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.*

KY. REV. STAT. ANN. § 131.520(1) (West 2021) (emphasis added). Thus, Defendants were legally obligated to follow the Department's mandate. *See id.*

KRS § 131.520(2) imposes personal liability on individuals who refuse to surrender property subject to levy. It states "[a]ny person who fails or refuses to surrender any property or rights to property subject to levy *shall be liable* in his own person and estate to the Commonwealth in a sum equal to the value of the property or rights not so surrendered." KY. REV. STAT. ANN. § 131.520(2) (West 2021) (emphasis added). Therefore, if Leadec and its employees refused to garnish Plaintiff's wages, the company would have become personally liable for Plaintiff's tax debts. *See id.*

Plaintiff alleges that the emphasized language in KRS § 131.520(1), "subject to an attachment or execution under any judicial process," requires that the Department obtain a court order prior to the surrender of his property. [R. 7–2, pp. 14–15, ¶¶ 2–3]. Because a court order did not accompany the Notice of Levy, Plaintiff argues that Defendants committed theft under KRS § 514.030. KY. REV. STAT. ANN. § 514.030 (West 2021) (defining the crime of theft by unlawful taking or disposition). Plaintiff misconstrues the language of KRS § 131.520(1). Defendants correctly argue that the language of KRS § 131.520(1), relied on by Plaintiff, simply provides an exception to the compliance requirement for property that is *already subject* to an attachment or a judicial proceeding. [R. 6–1, pp. 5–7]. Further, Kentucky law delegates broad authority to the Department to effectuate garnishments. KY. REV. STAT. ANN. § 45.238(1) (West 2021). KRS § 45.238(1) states that "[t]he department shall be vested with all the powers necessary to collect any referred debts." *Id.* The plain language and natural reading of the statute, coupled with Kentucky law allowing the Department to effectuate garnishments without a court order, supports the Defendants' interpretation. *See* KRS § 131.520(1); *see generally Univ. of Kentucky v. Moore*, 599 S.W.3d 798, 804 (Ky. 2019) (recognizing the Department of Revenue's authority under KRS § 45.238(1)). Thus, the Notice of Levy was effective without a court order.

Nowhere does Plaintiff allege that his wages were *already subject* to an attachment or execution such that Defendants could not garnish them. That is, Plaintiff has alleged no facts supporting his claim that Defendants violated KRS § 131.520(1).

Plaintiff's reliance on *United States v. O'Dell*, for the proposition that a notice of levy is not valid unless accompanied by a court order signed by a judge, fares no better. [R. 7–2, p. 15, ¶ 3]; s*ee United States v. O'Dell*, 160 F.2d 304, 307 (6th Cir. 1947). *O'Dell* is outdated and inapplicable for a multitude of reasons. First, *O'Dell* examined Internal Revenue Services ("IRS") levies, not Kentucky Department of Revenue levies. *O'Dell*, 160 F.2d at 305. Further, the Sixth Circuit decided *O'Dell* under the Internal Revenue Code of 1939, which required a warrant before levying on property. *See* 26 U.S.C. § 3692 (repealed by the Internal Revenue Code of 1954); *see also Rosenblum v. United States*, 300 F.2d 843, 844–45 (1st Cir. 1962) (finding that *O'Dell* was decided under the Internal Revenue Code of 1939 and that the Internal Revenue Code of 1954 no longer required a warrant). Congress removed the warrant requirement in 1954. *See* 26 U.S.C. § 6331; *see also United States v. Weintraub*, 613 F.2d 612, 621 (6th Cir. 1979) ("When a third party . . . in possession of the property of a taxpayer is served with a notice of levy on the taxpayer's property, the appropriate procedure is that the third party immediately surrender the property to the IRS."). Therefore, *O'Dell* is an inaccurate statement of current IRS procedural requirements. Regardless, the present case does not involve the IRS. Rather, the question is whether Kentucky law requires a court order prior to levying a debt. It does not. *See* KRS § 45.238(1). Kentucky statutes delegate the power to levy to the Department of Revenue without the need for a court order. *Id.*; *see also* KRS § 131.520(1). Even if this case involved an IRS levy, Plaintiff's Amended Complaint, which attempts to add a claim under KRS § 131.520(1)'s federal counterpart, 26 U.S.C. § 6332, fails for the same reasons. The plain

language of § 6332 contains no requirement for a court order, and the case law confirms this reading. Plaintiff fails to state a claim under Kentucky or federal statutory law, and the Court therefore dismisses these claims with prejudice.

### B. State Constitutional Claims

Plaintiff also claims that Defendants violated Sections 10 and 11 of the Kentucky Constitution. [R. 7–2, p. 11, ¶ 2]. Section 10 of the Kentucky Constitution is the state analogue of the Fourth Amendment of the United States Constitution, protecting individual citizens against unreasonable searches and seizures by the state. *See* KY CONST. § 10. Section 11 of the Kentucky Constitution is the state analogue of the Fifth Amendment of the United States Constitution, providing due process protections. *See* KY CONST. § 11. Plaintiff contends that Defendants unreasonably seized a portion of his wages in violation of Section 10. [R. 7–2, p. 11, ¶ 2(A)]. He further contends that Defendants violated his due process rights under Section 11 by not requiring a court order prior to transferring his wages. *See id.* at ¶ 2(B).

Defendants counter that the Court should dismiss these state constitutional claims because Kentucky does not recognize a private cause of action for violations of the state Constitution. [R. 6–1, pp. 7–8]. Kentucky law is clear that there is no private right of action for violations of the Kentucky Constitution. *Shepherd v. Univ. of Kentucky*, No. 5:16-005-KKC, 2016 WL 4059559, * 3 (E.D. Ky. July 28, 2016) ("Shepherd cannot maintain her claim. . . because Kentucky does not recognize a private right of action for alleged violations of the state Constitution."); *see also St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 537 (Ky. 2011) (declining to create a new cause of action for state constitutional violations). As discussed below, 42 U.S.C. § 1983 gives individuals a right of action to vindicate violations of *federal* law. *See* 42 U.S.C. § 1983 (2018); *see also Tallman v. Elizabethtown Police Dep't*, 344 F. Supp. 2d 992,

997 (W.D. Ky. 2004), *aff'd*, *Tallman v. Elizabethtown Police Dep't*, 167 F. App'x 459 (6th Cir. 2006). However, § 1983 does not create such a vehicle to vindicate state constitutional claims. *Tallman*, 344 F. Supp. 2d at 997. Nor has Kentucky law recognized such a private right of action for state constitutional claims. *Id.; see also Combs v. Breathitt Cty. Fiscal Ct.,* No. 5:16-cv-464-JMH, 2017 WL 4287545, at *3 (E.D. Ky. Sept. 27, 2017) ("Kentucky state law does not recognize a private cause of action under its Constitution."). Accordingly, Plaintiff's claims under the Kentucky Constitution fail as a matter of law, and the Court dismisses these claims with prejudice

### C. Federal Constitutional Claims

Plaintiff further argues that Defendants violated the Fourth and Fifth Amendments of the United States Constitution. [R. 7–2, pp. 11–12, ¶ 3]. His arguments mirror his state constitutional arguments. Although Plaintiff does not expressly invoke § 1983, it provides the proper vehicle for bringing his federal constitutional claims. *Id.* at pp. 10–17; *see also* 42 U.S.C. § 1983 (creating a private right of action to vindicate federal constitutional and statutory violations). For a viable § 1983 claim, a plaintiff must allege a violation of a federal right by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). That is, § 1983 only addresses private conduct that is "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 941 (1982) (finding that a party acted jointly with the state by utilizing state law to collect on a private debt). "'The Supreme Court has developed three tests for determining the existence of state action in a particular case: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test.'" *Romanski v. Detroit Entm't, L.L.C.*, 428 F.3d 629, 636 (6th Cir. 2005) (citations omitted). Under the public function test, a plaintiff must demonstrate that the private party exercised powers traditionally reserved to the state. *Wolotsky*

*v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992). The state compulsion test requires the plaintiff to show that the state exercised such coercive power over the defendant that his conduct is attributable to the state. *Id*. Finally, under the symbiotic relationship test, a plaintiff must demonstrate that the defendant and state had a sufficiently close nexus to consider the defendant's actions fairly attributable to the state. *Id.*

Plaintiff's Amended Complaint contains no plausible allegations for why Defendants' conduct could be "fairly attributable to the State." *See Lugar*, 457 U.S. at 937. Indeed, the only reference to state action in the entire Amended Complaint comes at the "Conclusion," where Plaintiff makes the unsupported conclusory statement that "Leadec, under color of law, voluntarily surrenders the earnings of the plaintiff without a court order . . . without the plaintiff's consent [which] violates fundamental law." [R. 7–2, p. 16]. In his Response, Plaintiff fails to discuss any of the three state action tests, cite any authority, or point to any other factual allegations in his Amended Complaint or elsewhere for why Defendants' actions could be "fairly attributable" to the state. [R. 9, p. 3, ¶ 5].

The District of Colorado granted a motion to dismiss a plaintiff's federal constitutional claims under analogous facts. *See Rollins v. Ingersoll-Rand Co.*, No. 06-cv-00336-REB-PAC, 2006 WL 2990210, at *3 (D. Col. Oct. 19, 2006). The *Rollins* plaintiff sued his employer for complying with a garnishment required by the state Department of Revenue. *Id.* He also claimed that the employer's actions violated the Fourth and Fifth Amendments. *Id.* The District of Colorado correctly reasoned that "[t]he protections of the Fourth Amendment only apply to governmental action . . . Defendant's action in following the law does not amount to action that is with the participation or knowledge of the government." *Id.* The Tenth Circuit similarly granted a motion to dismiss where a plaintiff sued his employer for garnishing his wages under

state law. *Diefenderfer v. Off. of Recovery Servs.*, No. 98-4230, 1999 WL 446012, at *2 (10th Cir. July 1, 1999). The *Diefenderfer* court reasoned: "[i]t is undisputed that [the defendant-employers] were required by law to garnish [plaintiff's] wages; private actors who merely comply with state law are not thereby acting under color of state law." *Id.*; *see also Walton v. U.S. Bank*, No. 2:09-CV-931, 2010 WL 3928507, at *2 (D. Utah Oct. 4, 2010) (finding no state action when a private defendant followed its state law obligation to garnish the plaintiff's wages, because its conduct was not fairly attributable to the state); *Moore v. Branch Banking & Tr. Co.*, No. 4:09-CV-116-JHM, 2010 WL 4962909, at *3 (W.D. Ky. Dec. 1, 2010) (reasoning that a private bank did not become a state actor by garnishing funds according to a valid garnishment order).

Like the employer-defendants in *Rollins* and *Diefenderfer*, Defendants did not become state actors by merely following their legal obligation to garnish Plaintiff's wages. *See Diefenderfer*, 1999 WL 446012, at *2*; *see also Rollins*, 2006 WL 2990210, at *3. Section 1983 addresses only state action, not claims against private actors, like Defendants. *See Atkins*, 487 U.S. at 48. Thus, Plaintiff has failed to state cognizable claims under the U.S. Constitution, and the Court dismisses these claims with prejudice.

### D. Breach of Contract Claim

Finally, Plaintiff contends that Defendant Leadec breached its contract with the UAW by failing to pay Plaintiff's full wages. [R. 7–2, p. 12, ¶ 4]. In transferring fifteen percent of his wages to the Kentucky Department of Revenue, Plaintiff argues, Defendant breached the collective bargaining agreement. *Id.* But Plaintiff's unadorned allegations fail to establish a plausible claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice."). Plaintiff attached an excerpt

of the collective bargaining agreement to his Amended Complaint that merely explains the agreed-upon wages for certain positions, including Plaintiff's former position. [R. 7–2, Ex. A, p. 20][8]. Plaintiff claims that the "[c]ontract states that Leadec will pay Stout wages of $15.58 per hour, to which Leadec took a portion of plaintiff's money under pretense of a tax levy that does not exist . . . ." [R. 7–2, p. 12, ¶ 4]. Plaintiff does not allege that Leadec reduced his pay outside of the fifteen percent garnishment, nor does he provide any other allegations of breach. *See id.*

Leadec counters that it paid the agreed-upon wages to Plaintiff in full, then deducted and transferred the wages it was obligated under state law to garnish. [R. 6–1, p. 12]. Plaintiff attached earnings statements to his Amended Complaint, which illustrate that Defendant paid Plaintiff his full salary, then deducted fifteen percent of his salary to satisfy the state tax debt. [R. 7–2, Ex. G, pp. 38–42]. Plaintiff's earnings statements foreclose his breach of contract claim because they demonstrate that Defendant paid him his full salary. *Id.* Plaintiff has failed to plead sufficient factual allegations to rise above the speculative. *See Iqbal*, 556 U.S. at 678. Because Plaintiff failed to plead any facts to support a breach of contract claim, the Court dismisses this claim with prejudice.

## IV. CONCLUSION

For the reasons set forth above, the Court will grant Plaintiff's Motion to Amend, [R. 5–1] and grant Defendants' Motion to Dismiss, [R. 6]. Accordingly,

**IT IS HEREBY ORDERED** as follows:

---

[8] At the motion to dismiss stage, a court may consider exhibits attached to the complaint without converting the motion to dismiss into a motion for summary judgment as long as those exhibits are "referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *see also Com. Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007); *Gray v. Wal-Mart Stores, Inc.*, No. 3:11-CV-367-H, 2012 WL 4212926, at *2 (W.D. Ky. Sept. 18, 2012) (considering a document attached to a pleading in ruling on a motion to dismiss). Here, the Court considers exhibits that Plaintiff attached to his Amended Complaint, which are central to Plaintiff's breach of contract claim and to which Plaintiff refers in his Amended Complaint, [R. 7–2, p. 12, ¶ 4].

1. Plaintiff's Motion to Amend, **[R. 5–1]**, is **GRANTED**.

2. Defendants' Motion to Dismiss, [R. 6], is **GRANTED**.

This the 2nd day of December, 2021.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY